THE PEOPLE OF THE STATE OF NEW YORK ex rel. JACOB RUPPERT REALTY CORPORATION, Relator, *v.* JACOB A. CANTOR and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.

(Supreme Court, Bronx Special Term for Trials, June, 1921.)

Taxation — jurisdiction of commissioner of taxes, etc., in New York city — assessment of property of manufacturing corporation — when objection to form of complaint and procedure deemed waived — owner of property is " party aggrieved " within section 290 of the Tax Law and section 906 of Greater New York charter, though tenant bound to pay taxes — certiorari — review of assessment for overvaluation — boilers, generators, etc., in buildings assessable as real estate — Tax Law, §§ 37, 219-j, 219-1 — Greater New York charter, § 895 — assessment reduced.

All that is necessary to the exercise of jurisdiction by the commissioner of taxes and assessments of the city of New York

**520** People ex rel. Ruppert Realty Corp. *v.* Cantor.

Supreme Court, June, 1921.      [Vol. 115.

to hear and determine a complaint in relation to an assessment upon property under section 895 of the Greater New York charter is, that within the statutory time limit a complaint in writing stating the grounds of objection to the assessment be presented to the commissioner. (P. 527.)

The form of the complaint, the particularity with which the property shall be described or the objections specified, are mere matters of procedure and do not go to the jurisdiction. (Id.)

The rule that technical objections to the form or sufficiency of pleading are waived if not taken in advance by proceeding to a hearing upon the merits, applies to proceedings before said tax commissioner to have an assessment revised. (Id.)

Where the application for the revision of such an assessment meets all the requirements of section 37 of the Tax Law and of section 895 of the Greater New York charter and is referred to a deputy tax commissioner for reexamination, and the hearing upon the merits is had without objection at any time being made to the form or sufficiency of the application, a reassessment may not be denied on the sole ground that the application was insufficient; the objections are deemed to have been waived. (Pp. 526–528.)

The legislature in retaining by section 290 of the Tax Law and section 906 of the Greater New York charter the statutory remedies heretofore provided for the revision and correction of assessments by a writ of certiorari, did not intend to exclude from its benefits an owner of property whose tenant by its lease was obligated to and did pay the taxes assessed against the property, and relator, the owner of the property in question here, is clearly a "party aggrieved" within section 290 of the Tax Law and section 906 of the Greater New York charter and entitled to maintain certiorari proceedings to review and correct an assessment against its property. (Pp. 529–533.)

The relator, a domestic manufacturing and mercantile corporation, is the owner of a plot of land in the city of New York, having a frontage of 250 feet on each of two streets and a depth of 200 feet, upon which there are a four-story freezing house, a four-story engine building and a six-story boiler house. In the total assessment of $400,000 upon the real estate in question for each of the years 1918, 1919 and 1920, there was included the alleged value of machinery and equipment in the buildings amounting to $133,000, which relator, on certiorari to review the assessment as erroneous for overvaluation,

claimed was personal property and exempt from taxation under sections 219-j and 219-l of article 9-A of the Tax Law, and that the true valuation of the real estate was $267,000, which claims were denied by the return to the writ of certiorari. (Pp. 522, 523.)   *Held,* that relator having by a preponderance of proof overcome the presumption that the machinery and equipment could not be removed without material injury to the buildings, a finding that all such machinery and equipment, with the exception of boilers, generators and main shafting, were so removable and not essential to the support of the buildings, is justified, and the conclusion follows, that all the machinery and equipment included in the machinery assessment, except as above stated, was personal property, not assessable as real estate, and therefore exempt from local taxation during the years in question.   (Pp. 538, 539.)

A contention of the relator that under section 219-l of the Tax Law as it stood when it was amended in 1919, only two of the six boilers used for the purpose of operating an ice-plant are taxable, because two is the maximum number which would be required to operate machinery in an ordinary building of the same size as relator's, is untenable.   Within the purview of said statute, which exempts boilers from the exemption therein provided, all six boilers are an integral part of the building and so long as they remain therein are assessable as real estate. (Pp. 539, 540.)

The actual market value on the taxable status dates of all the boilers as well as of the generators, main shafting and pulleys, concededly taxable, amounting in the aggregate to $36,105, as found by the court, must be deducted from the actual market value of the machinery and equipment included in the machinery assessment of $133,000, as of the several taxable status dates, and added to the building assessment.   (P. 541.)

The relator having fully established all the prerequisites necessary for a correction of the assessments and the court having found that on the several taxable status dates the actual market value of the land was $80,000 and the actual market value of the buildings was $187,000, to which should be added the $36,105, deducted from the actual market value of the machinery and equipment on said dates it is accordingly *held,* that there was an overvaluation in each of the years in question, to the extent of $96,895, and the several assessments will be reduced to the sum of $303,105.   (Pp. 544, 545.)

CERTIORARI proceedings to review and correct assessments for taxes.

James M. Vincent (Curtis A. Peters, of counsel), for relator.

John P. O'Brien, Corporation Counsel (Harry S. Lucia, of counsel), for respondents.

GIEGERICH, J.   These three proceedings were instituted to review and correct the several assessments made by the respondents for the purpose of taxation for the years 1918, 1919 and 1920 of the real estate of the relator in the borough of The Bronx, city of New York, designated as section 9, in block 2308, lot 5, and which premises are also known as Nos. 280 to 302 East One Hundred and Thirty-third street, borough of The Bronx, city of New York.  By the stipulation of the parties made in open court the three proceedings were tried as one, and it was agreed that the evidence adduced should be considered as the evidence in each of them.  The real property affected by these proceedings consisted of a plot of land on the south side of East One Hundred and Thirty-third street, running through to the north side of One Hundred and Thirty-second street, and having a frontage of 250 feet on each street and a depth of 200 feet.  The buildings on the said premises consisted of a four-story building used as a freezing house, a four-story building used as an engine building, and a six-story building used as a boiler house.  The petition in each of these proceedings alleges that the relator is a domestic manufacturing and mercantile corporation, and is the owner of the property in suit, and that the assessment is erroneous by reason of overvaluation, in that there was included in the total assessment of the real estate, viz., $400,000, the alleged value of machinery and equipment therein, amounting to $133,000, which is claimed by the relator to be per-

sonal property, and that the true valuation of the real property in question is $267,000, which several claims are denied by the return of the respondents in each of these proceedings and each of said returns, among other things, alleges that the assessment represented no more than the fair market value of the property on the taxable status dates, and requested that no reduction be made if the actual value of the property and improvements were not less than the total assessments. The total assessment in each of the said years was $400,000. The alleged valuation of such real estate was set down in two columns in the annual records in the borough of The Bronx for the said years, as follows: Value of real estate, unimproved, $80,000; value of real estate, with improvements, $400,000. Such separate entries were made pursuant to section 892 of the Greater New York charter, which provides " that the assessed value of real estate shall be set down in two columns; in the first column shall be given, opposite each separately assessed parcel of real estate, the sum for which such parcel under ordinary circumstances, would sell if wholly unimproved; and in the second column shall be set down the sum for which the said parcel under ordinary circumstances would sell, with the improvements, if any, thereon." During the time the books of annual record were open for inspection the relator in each of the years above mentioned filed with the department of taxes and assessments an application in writing, duly verified, claiming that such assessed valuation was erroneous by reason of over-valuation; that the machinery contained in the buildings, of the value of $133,000, was exempt under the so-called " Emerson Law," and asking that the assessed value of the said premises be fixed at $267,000. It appears from the allegations contained in the respondents' return in

each of these proceedings that a date was fixed for a hearing on each of the said applications, and due notice of such hearing was given to the person filing the same; that at such hearing there was no appearance on behalf of the relator, and no testimony was taken and no other papers were filed in support of the said applications. It further appears from the return in each of these proceedings, as amended pursuant to the stipulation signed by the attorneys for the respective parties, that each of the said applications was referred to the deputy tax commissioner who made the respective assessments, with instructions to re-examine the property and report to the board of taxes and assessments, and said deputy reported that he had re-examined the property; that the land factor was $200 and $120; that the building factor was $1.25 and $1, being 1, 2, 4 and 5 stories high, with 147,500 square feet of floor space, and the condition of improvements and general surroundings was good, and that the property consisted of an artificial ice-making plant, the building being erected expressly for this purpose, and that the land was assessed at $80,000, the buildings at $187,000 and machinery at $133,000, making a total of $400,000, and that the said machinery assessment of $133,000 included the following items, viz.: " 6 boilers, 435 h. p., 2 De La Vergne machines, 800 tons each; 1 De La Vergne machine, 500 tons; 1 Viller machine, 500 tons; 3 dynamos, 150, 100, 50 K. W.; 2 pumps, 5,000,000 gals.; 1 pump, 3,000,000 gal.; piping, cans &c." and " that the capacity of the plant was 750 tons daily at $180." The return of the commissioners in each of these proceedings further alleges that such deputy tax commissioner thereafter reported to the board orally that the assessment was just and equitable and that after duly considering the said application,

which the board regarded as insufficient to show any
and after duly considering the said reports of the
overvaluation or error in the assessment of $400,000,
deputy tax commissioner, and upon their own knowl-
edge of the character and value of the property, the
board concluded that there was no merit in the asser-
tion of the relator that the machinery contained in
the building was under section 219-j of the Tax Law
personal property and not assessable as real estate or
that the assessment was excessive and that the board
concluded that the assessment of $400,000 represented
no more than the actual value of the land and
improvements, including buildings and machinery
therein, which was taxable as real estate and not
exempt from assessment as personal property under
the provisions of section 219-j of the Tax Law and
the acts amendatory and supplemental thereto, and
that the board therefore confirmed the said assessment
at the sum of $400,000 for the year therein mentioned.
It will be seen from the foregoing summary of the
allegations of the petition and return that the
main questions to be determined are whether the
machinery and equipment in the ice plant were exempt
from taxation under sections 219-j and 219-l of arti-
cle 9-A of the Tax Law as of October 1, 1917, 1918
and 1919, and that if they were the value thereof, and
whether the several total assessments for the years
1918, 1919 and 1920 were correct, irrespective of the
method used by the deputy tax commissioner in mak-
ing the assessments. Before entering upon a discussion
of these questions it may be well to pass upon certain
objections raised by the respondents which go to the
jurisdiction or to the right of the relator to maintain
these proceedings. It is urged in the first place by the
respondents that the several applications of the rela-
tor to them for a review of its assessments failed to

give what the fair market value of the property was on the several taxable status dates, nor did they give the extent of the over-valuation, and that therefore the relator failed to make out a case showing a ground for relief based upon over-valuation. I am referred by the respondents to *People ex rel. Greenwood* v. *Feitner,* 77 App. Div. 428, as an authority for the position taken. The effect of the decision in that case, however, was overruled in *People ex rel. Edison Electric Illuminating Co.* v. *Feitner,* 86 id. 46; affd., 178 N. Y. 577. Section 37 of the Tax Law simply provides that the complainants "shall file with the assessors a statement, under oath, specifying the respect in which the assessment complained of is incorrect." Section 895 of the Greater New York charter, so far as material, provides: "If such application be made in relation to the assessed valuation of real estate, it must be made in writing, stating the grounds of objection thereto." It would thus appear that neither of the above quoted provisions requires that the market value of the property be stated in the application for revision of the assessment, and that all that is required is a statement of the grounds of the objection. The several applications for revision of the assessments in these proceedings meet with all the above quoted requirements of section 37 of the Tax Law and of section 895 of the charter. The return in each of these proceedings further alleges that the application therein failed to answer any of the questions on the printed form furnished by the commissioners and that such application did not show that the person who signed and swore to it was authorized to make it, or was familiar with the facts, or a real estate expert, or qualified to judge as to the value or the nature of the property, nor did the instrument contain any statement as to what machinery and

People ex rel. Ruppert Realty Corp. *v.* Cantor.   **527**

Misc.]          Supreme Court, June, 1921.

equipment was contained in said buildings, or its value, or the value of the land and buildings exclusive of the machinery, and that the verification was made by the said person as the secretary of the Jacob Ruppert Realty Corporation, stated to be the owner of the premises. Similar objections to the sufficiency of the application were urged in *People ex rel. Empire Mortgage Co.* v. *Cantor,* 190 App. Div. 512, and it was held that the only things necessary to the exercise of jurisdiction by the commissioners of taxes and assessments of the city of New York to hear and determine a complaint in relation to an assessment under section 895 of the Greater New York charter are, that within the time specified in the statute a complaint in writing stating the grounds of the objection be presented to them; that the form of the complaint, the particularity with which the property shall be described or the objections specified, are matters of procedure and do not go to the jurisdiction; that the rule that technical objections to the form or sufficiency of pleadings are waived, if not taken in advance, by proceeding to hear the case upon the merits, applies to proceedings before the tax commissioners to have an assessment revised, and that since the application to revise the assessment was referred to a deputy tax commissioner for the purpose of re-examination and a hearing having been had upon the merits without objection at any time to the form or sufficiency of the application, reassessment could not be denied on the sole ground that the application was insufficient. As already stated the several applications were referred to a deputy tax commissioner for re-examination and a hearing was had on the merits thereof without objection on the part of the respondents, and, therefore, under the rule laid down in the case last cited, whatever objections there

may have been to the form or sufficiency of the several applications were waived.   Another objection raised by the respondents is that the relator has failed to prove that it was aggrieved by the assessment. This point is based upon the fact that the premises under review were in possession of the Arctic Hygeia Ice Company during the years 1917, 1918, 1919 and 1920, and that by the terms of the lease the said Arctic Hygeia Ice Company was obliged to pay, and did pay, the taxes against the said property for the years 1918, 1919 and 1920.   Reliance is placed by the respondents upon the language of the following provisions of section 290 of the Tax Law: ''Any person assessed upon any assessment roll, claiming to be aggrieved by any assessment for property therein, may present to the supreme court a petition duly verified setting forth that the assessment is illegal, specifying the grounds of the alleged illegality, or if erroneous by reason of overvaluation, stating the extent of such overvaluation, or if inequal in that the assessment has been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby.''   And they further rely upon the following provisions of section 906 of the Greater New York charter: ''A certiorari to review or correct on the merits any final determination of the board of taxes and assessments shall be allowed by the supreme court or any justice thereof, directed to the commissioners of taxes and assessments on the verified petition of the party aggrieved, but only on the grounds which must be specified in such petition, that the assessment is illegal, and giving the particulars of the alleged illegality, * * * or in case of real estate, that

the same is erroneous by reason of inequality, and that the assessment has been made at a higher proportionate valuation than the assessment of other real estate of like character in the same ward or section, or other real estate on the tax-rolls of the city for the same year, specifying the instance in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby." In furtherance of points so raised by the respondents the argument is advanced that the relator, the owner of the property, is not the party aggrieved within the purview of section 290 of the Tax Law and section 906 of the Greater New York charter, because its pecuniary interests are not and may not be adversely affected. I do not think the legislature in retaining by the said enactments the statutory remedies heretofore provided for the revision and correction of assessments through a writ of certiorari (Laws of 1880, chap. 269; Gen. Tax Law, Laws of 1896, chap. 908, §§ 250 *et seq.*) intended to exclude from its benefits an owner of property whose tenant, under a lease thereof, paid the taxes levied against the property during his term. No such limited effect as is contended for by the respondents has been given by the courts to the meaning of the phrase " party aggrieved," which was contained in local laws for the revision and correction of assessments. On the contrary, such phrase has been given a much broader meaning in cases arising thereunder. That phrase was defined by the Court of Appeals in *Matter of Walter,* 75 N. Y. 354, 357, as follows: "A person aggrieved, by an act or omission, is one injured thereby. Doubtless the injury sustained need not be a remote and consequential result, but a direct one. The owner of the land affected by the assessment is directly injured thereby, for his property is rendered so much the less valuable to him; it is worth so much

34

the less in the market; so much as is the assessment, is taken from his other means, to relieve his land of the assessment; or the land itself is sold or leased by virtue of the lien.'' In that case a mortgagee was, under the circumstances detailed, held to be a '' party aggrieved '' and might move to vacate the assessment. Such phrase has also been held to include a former owner of the premises assessed who was bound to indemnify his grantee against the assessment or to remove it as a cloud on the title (*Matter of Phillips,* 60 N. Y. 16); a lessee who is obligated to pay any assessment upon the premises (*Matter of Burke,* 62 id. 224); a person who has become the owner of the property, after the confirmation of an assessment levied against the same and who takes title by the express terms of his conveyance subject to all assessments affecting the property (*Matter of Gantz,* 85 id. 536), and a purchaser of the land assessed after the work had been commenced and before the assessment had been laid and the land was conveyed to him, subject to any assessment to be made for the work, and the payment of the assessment was the principal consideration for the conveyance. *Matter of Pennie,* 108 id. 364. In *Matter of Burke, supra,* it was held that the lessee, as well as the owner, was authorized to institute proceedings to vacate the assessment, the court at page 228 saying: '' Either the owner whose title may be clouded by an illegal assessment, or a lessee who is under covenant to pay an assessment, is aggrieved when an invalid assessment is made; for it is on the records seemingly good, and has sooner or later to be met and removed. The provision of law for this special proceeding to vacate was meant to afford an early, speedy and cheap mode of testing the legality. It is open to any one, owner or lessee, who is likely to be put to litigation and expense by reason

of it." It should be borne in mind that prior to the
enactment of chapter 269 of the Laws of 1880, grant-
ing the statutory writ of certiorari to review assess-
ments for the purpose of taxation, the common-law
writ extended only to the review of assessments void
for want of jurisdiction on the part of the taxing
officer or in relation to the specific property, or to the
review of assessments which were obnoxious to the
charge of some other illegality as distinguished from
error in judgment whether affecting the question of
fact or of law. The office of such a writ was not to
revise and modify or set aside assessments on the
ground that they were excessive or unequal. *People
ex rel. Kendall* v. *Feitner,* 51 App. Div. 196, 199, and
citations. To remedy this situation the act of 1880
was passed, which was entitled "An Act to provide
for the review and correction of illegal, erroneous or
unequal assessments." The court in *People ex rel.
Schaeffler* v. *Barker,* 87 Hun, 194, 198, 199; affd., 148
N. Y. 731, speaking of such act, said: " The act was
passed to provide a remedy for illegal, erroneous and
unequal assessments in whatever form or manner they
are levied." And further on: " The statute must be
construed so as to suppress the mischief aimed at by
its authors, * * *." It was held in that case that the
property owner was the party aggrieved and entitled
to the writ, even though his property on the assess-
ment roll was assessed under a name other than his
own. The act of 1880 not only provided a new statu-
tory writ of certiorari, but also provided for a refund
" to the petitioner " for any excess of taxes paid by
him as a result of an erroneous assessment. The sub-
stance of this act was preserved in the former Tax
Law, entitled "An Act in relation to taxation, con-
stituting chapter 24 of the General Laws." Laws
of 1896, chap. 908, §§ 250 *et seq.* Section 256 of this

act provided for the refund " to the petitioner," and this section was amended by chapter 721 of the Laws of 1907 so as to provide that the refund should be made " to the petitioner or other person paying the tax." This language has been preserved in section 296 of the present Tax Law (Consol. Laws, chap. 62). It should be pointed out that the property owner is entitled to the same exemption under section 219-l of the Tax Law as is his tenant. The owner is aggrieved the moment the assessment is made, because the same constitutes a lien upon his property and a cloud upon it. The mere fact that the tenant is obligated to pay the tax does not deprive him of the statutory writ of certiorari. The tenant may never pay it, in which event, of course, the owner must eventually pay, as the tax is *in rem* and a lien upon the property; or, if he pays it, he may not do so prior to the last day on which the writ of certiorari may be obtained. In the event of the payment of the tax by the tenant, if the owner has obtained a writ of certiorari and is successful, the former is entitled to a refund, with interest, pursuant to section 296 of the Tax Law. The payment of the tax, however, is not the only element to be considered in determining whether the owner is aggrieved by the assessment. As pointed out in *Matter of Walter, supra,* the owner of land affected by the assessment is directly injured thereby, because the property is rendered so much less valuable to him, and therefore is worth so much the less in the market. It is common knowledge that intending purchasers of real estate take into consideration the assessed valuation thereof for the purposes of taxation, because the higher it is the greater are the taxes, with the consequent diminution of the net return from the property and a decrease in the fee value as well as the rental value thereof. Under the foregoing

authorities, as well as upon reason, the relator is clearly a " party aggrieved " by the assessments in question, and it has therefore the undoubted right to maintain these proceedings. We are thus brought to the consideration of the important question whether or not the machinery and equipment was exempt from taxation. The relator contends that the machinery and equipment installed in the buildings in question, with the exception of the boilers, generators and main shafting, were exempt from taxation under section 219-j and section 219-l of article 9-A of the Tax Law and also under the decision in *People ex rel. General Chemical Co.* v. *Cantor,* 105 Misc. Rep. 62; affd., 188 App. Div. 959; 228 N. Y. 506, and that hence the value of the same was improperly included in the several assessments. Article 9-A of the Tax Law above mentioned is commonly known as the " Emerson Act " or the " New York State Income Tax Law." It was added by chapter 726 of the Laws of 1917 and substitutes a new system for the taxation of manufacturing and mercantile corporations and provides that thereafter such corporations shall not be subject to assessment or taxation on their personal property which the act defines (*People ex rel. General Chemical Co.* v. *Cantor, supra*) and radically changes the method of determining the annual franchise tax of such corporations. *People ex rel. Iroquois Door Co.* v. *Knapp,* 186 App. Div. 172. It imposes a tax at the rate of three per cent of the net income of such corporations, payable in advance, to be computed upon the basis of their net income for their fiscal or calendar year next preceding, which income is presumably the same upon which said corporations were required to pay federal taxes (§§ 209, 219), and provided further that one-third of said franchise tax should be distributed by the state treasurer to the treasurers of the several counties of

the state and disposed of by them as provided in section 219-h of the Tax Law. Section 219-j of article 9-A of the Tax Law, as contained in said chapter 726 of the Laws of 1917, among other things provided that "After this article takes effect manufacturing and mercantile corporations shall not be assessed on any personal property which for the purpose of this exemption shall include such machinery and equipment affixed to the building as would not pass from grantor to grantee as a part of the premises if not specifically mentioned or referred to in the deed, or as would, if the building were vacated or sold, or the nature of the work carried on therein changed, be moved, except boilers, ventilating apparatus, elevators, gas, electric and water-power generating apparatus and shafting." The meaning of the foregoing provision was passed upon in *People ex rel. General Chemical Co.* v. *Cantor, supra.* In that proceeding the relator, a manufacturing corporation, sought to review an assessment for the year 1918 on real property owned by it and to correct the assessment because there was erroneously included therein the value of machinery and equipment. It was conceded that all the machinery and equipment could be detached and removed without material injury to the building, and it was held that the relator's motion to reduce the assessment should be granted as prayed for. Mr. Justice Delehanty in the course of his opinion said: " Prior to the passage of the Emerson Act, ' real estate ' for the purpose of taxation was defined by subdivision 6, section 2 of the Tax Law as ' the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon under or above, or affixed to the same,' and under the decisions of this state it has been held that pursuant to said section quoted, machinery installed in a build-

ing and affixed to the realty is taxable as real estate. *People ex rel. N. Y. Edison Co.* v. *Wells,* 135 App. Div. 644, and cases there cited.   But the situation in this respect is now changed.   The legislature by the Emerson Act has defined what shall constitute 'personal property' for the purpose of taxation of mercantile and manufacturing corporations and has made such exempt from local taxation.   The language used in the statute is in nowise uncertain or doubtful of meaning, and in my opinion the plain intent thereof was to exempt from personal tax such machinery and equipment affixed to the building as could be removed therefrom without material injury thereto, except, of course, boilers, etc., expressly precluded.''  The substance of the provisions as contained in section 219-j of chapter 726 of the Laws of 1917 were by the Laws of 1918, chapter 271, section 3, in effect April 19, 1918, retained in a new section known as section 219-l, which, with the amendments and additions made thereto, reads as follows:  '' Section 219-l.  Personal property defined.  The term ' personal property,' for the purposes of the exemption from assessment and taxation thereon locally as granted by section two hundred and nineteen-j of this chapter, shall include such machinery and equipment affixed to the building as would not pass between grantor and grantee as a part of the premises if not specifically mentioned or referred to in the deed, or as would, if the building were vacated or sold, or the nature of the work carried on therein changed, be moved, except boilers, ventilating apparatus, elevators, gas, electric and water power generating apparatus and shafting.  An owner of a building is entitled to the same exemption under this section as a lessee and every assessment of real property made subsequent to June fourth, nineteen hundred and seventeen, shall be subject to the provisions

of this section as amended hereby.'' It will be observed that a new provision was added by this amendment, by the terms of which the owner is entitled to the same exemption as a lessee. Section 219-l was amended by the Laws of 1919, chapter 628, section 14, in effect May 14, 1919, so as to read as follows: '' Section 219-l. Personal property defined. The term ' personal property,' for the purposes of the exemption from assessment and taxation thereon locally as granted by section two hundred and nineteen-j of this chapter, shall include any movable machinery and equipment used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto. The term ' personal property ' as used in such section, shall not include boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power-generating apparatus, shafting other than counter-shafting, equipment for the distribution of heat, light, power, gases and liquids, nor any equipment consisting of structures or erections to the operation of which machinery is not essential. An owner of a building is entitled to the same exemption under this section as a lessee.'' Upon comparing the foregoing provisions with those contained in the Laws of 1918, chapter 272, section 3, it will be seen that while certain clauses have been omitted and others have been substituted, the provisions of the amended section granting exemption from taxation to such movable machinery and equipment as could be removed without material injury to the building are declaratory of the rule laid down in *People ex rel. General Chemical Co.* v. *Cantor, supra,* upon that subject. It should, perhaps, be observed in this connection that by adding the words '' not essential for the support of the building, structure or superstruc-

People ex rel. Ruppert Realty Corp. *v.* Cantor. **537**

Misc.]          Supreme Court, June, 1921.

ture '' the legislature intended to remove whatever doubt there might still be with respect to the manner of the affixation of the machinery and equipment installed therein for trade· or manufacture in order to entitle the applicant to the exemption provided by the said section, whenever such machinery and equipment could be removed without injury to the building. It must also be borne in mind that the amended section omits the following language contained in the one as it stood at the time of such amendment, viz.: '' Or as would, if the building were vacated or sold, or the nature of the work carried on therein changed, be moved.'' The deputy tax commissioner testified that he included in the building assessment the value of the elevator and of the smokestack, and that with the exception of certain items of machinery, which he separately valued at $133,000, every other item in the building was included in the building assessment. Such proof was competent (*People ex rel. Knickerbocker Co.* v. *Wells,* 99 App. Div. 455, 457–459), and it conclusively shows that the claim of the respondents that such elevator and smokestack have not been assessed is clearly untenable. The report of the deputy tax commissioner which, as already stated, forms part of the return of the commissioners in each of these proceedings, shows that the machinery assessment includes six boilers and certain other kinds of machinery. The relator concedes that two boilers, three generators and shafting are taxable, and hence it will not be necessary to determine whether or not they could have been removed without material injury to the buildings. With these exceptions the relator insists that all other machinery and equipment included in the machinery assessment were removable without material injury to the buildings. There is no question but that such other machinery and equipment

were used for trade or manufacture during the years in question, and I shall therefore proceed to inquire if they were removable without material injury to the buildings. It appears from the evidence that the machinery, apparatus and equipment in the buildings in question were installed therein after the buildings had been completed; that such machinery, apparatus and equipment were brought into the buildings in question in separate parts, which parts were assembled on the floors of the buildings on which the same were located and could be dismantled and carried out of the buildings through the doors thereof in the same manner in which they were brought in; that the floors of said buildings consisted of concrete, and all of the machinery, apparatus and equipment was brought into the building and assembled and set upon these concrete floors, some of them being stabilized by means of bolts and some of them resting on said floors without any fastenings whatsoever. So far as concerns the issues relating to the removability of the machinery and equipment claimed to be exempt from taxation, I have, after a careful consideration and analysis of the evidence, reached the conclusion that they should all be decided in favor of the relator. I am therefore of the opinion that the relator has by a preponderance of the evidence overcome the presumption that the machinery and equipment in question could not be removed without material injury to the buildings, and I accordingly find that all such machinery and equipment, with the exception of the boilers, generators and main shafting, were removable without material injury to the buildings, structures or superstructures, and that the same were not essential for the support of the said buildings, structures or superstructures. If I am right in this conclusion, then it necessarily follows that all the machinery and equip-

People ex rel. Ruppert Realty Corp. *v.* Cantor.    539

[Misc.]              Supreme Court, June, 1921.

ment included in the machinery assessment, with the exception of the boilers, generators and main shafting, were personal property and not assessable as real estate, and therefore exempt from local taxation during the years in question. The relator makes the point that only two of the six boilers used for the purpose of operating the ice plant are taxable, because, as claimed, that is the maximum number which would be required to operate machinery in an ordinary building of the same size as the relator's building. This contention is based upon the following language of section 219-l of the Tax Law as it stood when it was amended in 1919, viz.: "Or as would if the building were vacated or sold, or the nature of the work carried on therein changed, be moved." As already stated, this provision was omitted from the section in question in its amended form, and the provision so omitted would therefore, even if it were held that the relator came within the same, only apply to the taxes for 1918 and 1919. The provision above quoted was passed upon in *People ex rel. General Chemical Co.* v. *Cantor, supra,* and it was held that the same rule of construction applied to the preceding clause was applicable to the one under review, and that therefore, if the machinery and equipment were permanently affixed to the building it would be properly taxable as real estate, whether or not the building were vacated or sold, or the nature of the work carried on therein changed. It is true that the point so raised by the relator in these proceedings was not considered by the court in that case, but it is plain from a reading of the provision so quoted in connection with the one preceding it, in the light of the decision in the *General Chemical Company* case, that its purpose was to include within the definition of the term "personal property" for the purpose of the exemption such

removable machinery and equipment as could be moved if the buildings were vacated or sold, or the nature of the work carried on therein changed; in other words, that the machinery and equipment should under such circumstances retain its character as personal property. It cannot, however, by any necessary or fair construction, be fairly inferred that the legislature intended by such provision to provide that machinery and equipment coming within the exception to the exemption provided should nevertheless be regarded as personal property, or to place any limitation for the purposes of taxation upon the number of articles of machinery not exempt from taxation merely because a smaller number would ordinarily be required in a building of the same size if a different kind of work were carried on therein. Under the provisions of section 219-1 of the Tax Law boilers are expressly exempted from the exemption therein provided. Within the purview of the Tax Law they are an integral part of the building, and as long as they remain therein and are used they are assessable as real estate. Having thus reached the conclusion that all six boilers were taxable, the next question is what was the actual market value on the taxable status dates of such boilers, as well as of the three generators, main shafting and pulleys, which, as seen, the relator concedes were taxable. After considering all the evidence I find that the actual market value of those items of machinery on the first day of October, 1917, 1918, and 1919, was as follows: Six boilers, $26,415; three generators, $9,100; main shafting and pulleys, $590, amounting altogether to the sum of $36,105, which is to be deducted from such sum as I shall find was the actual market value of the machinery and equipment included in the machinery assessment as of the several taxable status dates and added

to the building assessment.  As shown above, all the machinery and equipment included in the machinery assessment, with the exception of six boilers, three generators, main shafting and pulleys, were exempt from taxation.  The entire machinery assessment, however, includes the said boilers, generators, main shafting and pulleys, and the entire machinery and equipment, including these items of taxable property, was assessed at $133,000.  After considering all the facts I am of the opinion that the sum last mentioned was the full or actual value of all such machinery and equipment on the several taxable status dates, from which sum, however, there should be deducted the sum of $36,105, which, as above stated, I have found was the actual market value of all the machinery not exempt from taxation on such dates.  Deducting the last mentioned sum from the said sum of $133,000 leaves the sum of $96,895, the aggregate value of all the exempt machinery and equipment.  Both parties introduced evidence relative to the value of the land and buildings, and therefore it cannot be assumed, even if the provisions of the charter apply here, that the assessment is erroneous to the extent of the difference between the actual market value of the lands and buildings and the full or actual value of the exempt machinery and equipment.  See *People ex rel. Gleason* v. *Purdy,* 223 N. Y. 88, 92.  A certiorari proceeding under the Tax Law is very much like a revaluation of the property which is the subject of assessment. *People ex rel. Jamaica W. S. Co.* v. *Tax Commissioners,* 196 N. Y. 39, 50.  The total assessment can only be reviewed (*People ex rel. Gleason* v. *Purdy, supra,* 92, and citations), and consequently actual market value of the land unimproved and the land with improvements thereon, exclusive, of course, of the value of the exempt machinery and equipment,

must also be taken into consideration in determining
whether or not there has been an overvaluation of
the property. The respondents insist, however, that
the market value of the land with improvements,
exclusive of the exempt machinery and equipment,
during the years in question exceeded the sum of
$400,000, the total assessment imposed. The relator,
on the other hand, maintains that the value of the
land and improvements was no more than that placed
upon it by the deputy tax commissioner when he
valued the land at $80,000 and the buildings at
$187,000, amounting in the aggregate to $267,000.
Under the Consolidation Act (Laws of 1882, chap. 410,
§ 814) real property was required to be assessed at the
sum for which it ''under ordinary circumstances would
sell.'' That section, so far as material, provided as
follows: '' It shall be the duty of the deputy tax com-
missioners, under the direction of the commissioners
of taxes and assessments, to assess all the taxable
property in the several districts that may be assigned
to them for that purpose by said commissioners, and
they shall furnish to them, under oath, a detailed
statement of all such property showing that said
deputies have personally examined each and every
house, building, lot, pier, or other assessable property,
giving the street and ward map number of such real
estate embraced within said districts, together with the
name of the owner or occupant, if known; also, in
their judgment, the sum for which such property
under ordinary circumstances would sell, with such
other information in detail relative to personal prop-
erty or otherwise as the said commissioners may, from
time to time, require.'' The Court of Appeals in *Peo-
ple ex rel. Manhattan Railway Co.* v. *Barker,* 146 N. Y.
304, construing the foregoing provisions, at pages 312,
313, said: ''And under the Consolidation Act for the

City of New York it shall be assessed ' at the sum for which such property under ordinary circumstances would sell.' The value of property is determined by what it can be bought and sold for, and there can be no doubt but that these various expressions used in the statute all are intended to mean the *actual value* of the property.'' The foregoing provisions were retained in section 889 of the Greater New York charter (Laws of 1897, chap. 378). Such section, however, was amended by chapter 466 of the Laws of 1901, and again by chapter 454 of the Laws of 1903. By the act of 1903 section 889 was amended so as to read as follows: '' It shall be the duty of the several deputy tax commissioners, under the direction of the board of taxes and assessments, to assess all the taxable property in the several districts that may be assigned to them for that purpose by said board, and they shall furnish to the said board, under oath, a detailed statement of all such property, showing that said deputies have personally examined each and every house, building, lot, pier or other assessable property, giving the street, lot, ward, town and map number of such real estate embraced within said district, together with the name of the owner or occupant, if known; also the sum for which, in their judgment, each separately assessed parcel under ordinary circumstances would sell if it were wholly unimproved; and separately state the sum for which, under ordinary circumstances, the same parcel of real estate would sell with the improvements, if any, thereon; with such other information in detail relative to personal property or otherwise as the said board may, from time to time, require. * * * '' The provisions last above quoted were passed upon in *People ex rel. Poor* v. *Wells,* 139 App. Div. 83, where the court, speaking through Mr. Justice Dowling, at page

544   People ex rel. Ruppert Realty Corp. *v.* Cantor.

Supreme Court, June, 1921.          [Vol. 115.

87, said: " By section 889 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1903, chap. 454) it is made the duty of the deputy tax commissioners, in arriving at their conclusions as to the assessable value of taxable property, to state under oath to the board the sum for which, in their judgment, each separately assessed parcel of real estate under ordinary circumstances would sell if it were wholly unimproved. Under this provision it is the duty of commissioners of taxes and assessments to assess this property year by year at its actual market value, no more, no less. (*People ex rel. Manhattan R. Co.* v. *Barker,* 146 N. Y. 304, 312.) " That case was affirmed by the Court of Appeals on the opinion of Dowling, J., below (200 N. Y. 518), and the rule there laid down as to assessing the property at its market value was applied in *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, 11. From the authority of these cases it follows that the value of the real property involved in these proceedings must be determined by its actual market value — that is, the amount for which it would sell under ordinary circumstances during the years in question. Applying such rule of valuation to the real estate in suit, and without discussing in detail the evidence relative to the value of the land and buildings, it is sufficient to say that I find that on the several taxable status dates the actual market value of the land was the sum of $80,000, and the actual market value of the buildings was $187,000, to which should be added the sum of $36,105, the aggregate actual market value of the said six boilers, three generators, main shafting and pulleys, as found by me, and amounting in the aggregate to the sum of $303,105. From what has preceded it is clear that there has been an overvaluation in each of the years in question to the extent of $96,895, which is the difference

between $400,000, the total amount of the assessment, and the sum of $303,105, which I have found was the actual market value of the land with improvements thereon on the several taxable status dates. In view of the evidence I am strongly of the opinion that the relator has sustained the burden of showing affirmatively by a preponderance of the evidence that the total assessment for each of the years in question was erroneous by reason of overvaluation; that it has overcome the presumption of the correctness of the several assessments; that it has fully established all of the prerequisites necessary for a correction thereof, and that hence its claim for a reduction of the same is well founded. My conclusion is that the several assessments levied by the respondents against the said real property for the years 1918, 1919 and 1920 of $400,000 are erroneous by reason of overvaluation to the extent of $96,895, and that such several assessments should be reduced to the sum of $303,105. The respective parties may submit requests for findings within five days after the publication hereof. All papers received by me, including the stenographer's minutes, exhibits, briefs and filed papers, have been returned to the clerk, to whom such requests to find should be handed in, with proof of service.