16 N.Y.2d 222 (1965)
In the Matter of the City of Lackawanna, Respondent-Appellant,
v.
State Board of Equalization & Assessment of the State of New York, Appellant-Respondent.
Court of Appeals of the State of New York.
Argued June 7, 1965.
Decided October 28, 1965.
Peter A. Vinolus, Corporation Counsel (Robert M. Hitchcock and Thomas M. Dole of counsel), for respondent-appellant.
Louis J. Lefkowitz, Attorney-General (Edward J. Grogan, Paxton Blair and George A. Radz of counsel), for appellant-respondent.
Judges VAN VOORHIS, BURKE and SCILEPPI concur with Judge FULD; Judge BERGAN dissents in an opinion in which Chief Judge DESMOND and Judge DYE concur.
*225 FULD, J.
The question posed for our consideration is whether certain property at the plant of the Bethlehem Steel Company in the City of Lackawanna was properly classified as taxable real property by the State Board of Equalization.
Pursuant to the authority vested in it (L. 1960, ch. 335, § 10), the board fixed the state equalization rate for the city (for 1959) at 25 by adding to its appraisal of the full value of the taxable real property in the city $119,536,300 of property at the Bethlehem plant which the city had considered not properly assessable as real property and, accordingly, had not included in its assessment roll.[1] Challenging the board's determination (of 25) *226 which represented a sharp reduction in its equalization rate, the city brought the present article 78 proceeding, contending that the property in issue was not taxable as real property under subdivision 12 (par. [f]) of section 102 of the Real Property Tax Law. Although the court at Special Term and the Appellate Division disagreed as to several items of comparatively small value in the establishment of the equalization rate, their rulings in substantial measure sustained the board's determination.
The property which accounts for the $119,536,300 increase in valuation consists of these items: 7 blast furnaces valued at $53,000,000; 35 open hearth furnaces valued at $29,000,000; 459 coke ovens valued at $24,000,000; 95 soaking pit furnaces valued at $5,700,000; a by-products plant valued at $2,000,000 (included in which were piping and pumps worth $341,600); electrical and steam properties valued at $4,707,300; and ore bridges and unloading equipment valued at $1,129,000. The first four items  the blast, open hearth and soaking pit furnaces, as well as the coke ovens  which comprise $111,700,000 of the property, may be considered together since they possess the same basic physical characteristics. They are, essentially, substantial masonry structures, some of great size, reinforced or contained by steel shells or buckstays.
Some idea of the monumental size of the 7 blast furnaces is suggested by the fact that an average of 200 carloads of brick was required to construct the masonry in each of them. They average about 150 feet in height, have a hearth diameter of 21 to 29 feet and rest on heavy concrete foundations which are supported by pilings driven to bedrock. Concededly, neither the masonry nor the foundations could be moved and while, conceivably, the steel shell encasing the blast furnace masonry stack could be moved, this could be accomplished only by dismantling or cutting it (by acetylene torch) into pieces of movable size. The 35 open hearth furnaces and 459 coke ovens  containing, in proportion to their steel shells, a greater amount of refractory masonry than do even the blast furnaces  are equally unmovable and the soaking pit furnaces include a 150-foot high smoke-stack of masonry and steel which would tend to further discourage any thought of moving them.
There is no doubt that, by common-law standards, these structures would be deemed real property. Their magnitude, their *227 mode of physical annexation to the land and the obvious intention of the owner that such annexation be permanent would, indeed, compel that conclusion. However, this is not decisive of the question presented. There must also be considered the definition of taxable real property contained in subdivision 12 (par. [f]) of section 102 of the Real Property Tax Law. Insofar as pertinent, that provision reads as follows:
"12. `Real Property', `property' or `land' mean and include:
* * *
"(f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto".
In short, this provision, derived from (and replacing) section 3 of the Tax Law, accords to a corporation subject to a franchise tax under article 9-A an exemption from the real property tax for property which is encompassed within the description of "movable machinery or equipment * * * used for trade or manufacture and not essential for the support of the building [or] structure * * * and removable without material injury thereto".[2] Since Bethlehem Steel is such a corporation, that is, one subject to the franchise tax imposed by article 9-A, the taxability of certain of its properties is governed by paragraph (f) of subdivision 12.
Quite obviously, the great complex of masonry structures, erections and equipment at Lackawanna does not fall within the special exemption for "movable machinery and equipment". The city contends, however, that the furnace and oven structures *228 are nontaxable under paragraph (f) of subdivision 12 because they fall within the category of "equipment consisting of structures or erections to the operation of which machinery is essential".
The argument does not survive analysis. Any ambiguity arising from a reading of subdivision 12 (f) in its entirety is thoroughly clarified by its legislative history.
The Real Property Tax Law was enacted in 1958 to recodify and incorporate into one statute those provisions of the old Tax, Education and Village Laws, as well as certain unconsolidated enactments, which related to the assessment and taxation of real property (L. 1958, ch. 959). Neither paragraph (f) of subdivision 12 nor any other provision of the new statute was intended to change the definition or classification of real property subject to the real property tax or set any new standards or criteria for determining the taxable status of such property. The very Legislature which wrote paragraph (f) of subdivision 12 into the Real Property Tax Law explicitly, and unequivocally, announced, in subdivision 5 of section 1602 of that same law, that
"[the] repeal * * * of * * * the last two sentences of section three of [the Tax Law] and the re-enactment of the provisions thereof in [subdivision] twelve * * * of section one hundred two * * * are intended to effectuate a continuation and restatement, without change in substance or effect, of the provisions of such laws and the classification of any property as real property or personal property, as the case may be, shall not be broadened, increased, discontinued, diminished, affected or impaired by reason of such re-enactment."
The "last two sentences" of section 3 of the Tax Law  which, according to the Legislature's pronouncement, reflected the sense and meaning of the new paragraph (f) of subdivision 12  read as follows:
"As used in this section, the term `personal property,' in its application to the property of corporations taxable under article nine-a of this chapter, shall include any movable machinery and equipment used for trade or manufacture and not essential for the support of the *229 building, structure or superstructure, and removable without material injury thereto and shall not include boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting, equipment for the distribution of heat, light, power, gases and liquids, nor any equipment consisting of structures or erections to the operation of which machinery is not essential. An owner of a building is entitled to the same exemption under this section as a lessee."
Thus, section 3 provided for a single tax exemption and specifically excluded from the exemption two other categories of property. More particularly, with respect to one of the latter categories, the section recited that the term personal property was to exclude "any equipment consisting of structures or erections to the operation of which machinery is not essential". This meant, of course, that such equipment was to continue to be treated as real property and to be taxed as such. In the 1958 recodification, the personal property tax having theretofore been abolished (L. 1933, ch. 470, § 1), former section 3 was rephrased (in Real Property Tax Law, subd. 12, par. [f]) as a definition of real property. In the course of this reformulation, the "equipment" clause was transposed or inverted  to recite that the term real property was to exclude "equipment" consisting of structures or erections to whose operation machinery "is essential"  but this transposition or inversion was not intended to effect a reclassification of property or establish a new tax exemption.
In view of the very clear expression of legislative design contained in subdivision 5 of section 1602 of the Real Property Tax Law  that the repeal of section 3 and the re-enactment of its provisions in subdivision 12 "are intended to effectuate a continuation and restatement" of the former statute "without change in substance or effect"  paragraph (f) of subdivision 12 may not be read as extending or affecting the scope of the exemption previously provided by section 3. The latter section contained a single exemption, namely, "movable machinery and equipment used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto", and that *230 description covers none of the Bethlehem Steel property here in dispute.
We deal, unquestionably, with a statute of exemption. Not only has the Legislature consistently and expressly referred to the exclusion as an "exemption" (Tax Law, § 3 [last sentence]; Tax Law, § 219-1, as amd. by L. 1919, ch. 628, § 14) but the courts have so characterized it. (See, e.g., Matter of Martin v. Gwynn, 18 A D 2d 851, 852.) As this court noted, "Tax exemptions * * * are limitations of sovereignty and are strictly construed. [Cases cited.] If ambiguity or uncertainty occurs, all doubt must be resolved against the exemption." (People v. Brooklyn Garden Apts., 283 N.Y. 373, 380; see People ex rel. Mizpah Lodge v. Burke, 228 N.Y. 245, 247-248.) Considering both the language of the statute before us and its history, it would be an indefensible extension of the phrase "movable machinery" to hold that the huge masonry and steel structures here under consideration fall within that statutory exemption. In construing paragraph (f) of subdivision 12, we may not forget that its language is derived from former section 3 and was intended to exclude from exemption the same property as was excluded by the earlier statute. To construe paragraph (f) of subdivision 12 as creating a new exemption would violate both the cardinal principle that exemption statutes are to be strictly construed and the basic provision contained in the first sentence of old section 3 (re-enacted in Real Property Tax Law, § 300) that "[a]ll real property within the state is taxable unless exempt from taxation by law." (See, also, County of Herkimer v. Village of Herkimer, 251 App. Div. 126, 127, affd. 279 N.Y. 560.)
It necessarily follows that the courts below correctly characterized as assessable real property the four categories of property (consisting of furnaces and ovens) valued at $111,700,000.
There remains for our consideration the other properties which the State Board determined to be taxable: a by-products plant, valued at $2,000,000, and electrical and steam properties, valued at $4,707,300.[3] Special Term and the Appellate Division *231 sustained the board's determination as to the tanks and towers of the by-products plant, valued at $1,658,400. These tanks and towers do not appear to be "movable machinery or equipment" and are, therefore, like the masonry and steel furnaces and ovens, not exempt from taxation. The area of disagreement between Special Term and the Appellate Division was confined to the piping and pumps in the by-products plant, valued at $341,600, and the electrical and steam properties, valued at $4,707,300. Although Special Term held both to be taxable real property, the Appellate Division held them to be exempt and modified the order to the extent of $5,048,900  an amount which, we pause to observe, would make no substantial change in the equalization rate. On the record before us, the items as to which the courts below were in disagreement appear to fall within the taxable category of "equipment for the distribution of heat, light, power, gases and liquids" (Real Property Tax Law, § 102, subd. 12, par. [f]).
The order of the Appellate Division should be modified, without costs, by reversing so much thereof as held that the steel piping and pumps in the by-products plant and the items included in the electrical and steam group were not taxable real property and, as so modified, the order appealed from should be affirmed.
BERGAN, J. (dissenting).
The provisions of subdivision 12 (par. [f]) of section 102 of the Real Property Tax Law, as the majority opinion demonstrates, are concerned with definitions. This subdivision provides that "Real property", "property", or "land" include certain enumerated items, but do not include "movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential * * * used for trade or manufacture and not essential to the support of the building, structure or superstructure, and removable without material injury thereto" of a corporation taxable under article 9-A of the Tax Law.
This rather ambiguous language to be intelligible must be read with its purpose in mind  to relieve corporations already paying corporate franchise taxes from paying an additional real estate tax on certain machinery and equipment used dynamically in the corporate enterprise.
*232 The first and basically controlling test is that the property be "movable". The expression "machinery * * * to the operation of which machinery is essential" would intrinsically be meaningless; and therefore this reference must be to "equipment consisting of structures" to the operation of which machinery is possible. Such structures would embrace a large variety of industrial facilities where the two conditions of movability and essential operation by machinery conjoin.
The sentence thereupon deals with exclusions from these general categories following the word "not". Property otherwise in the described category does not fall in the class of personalty if it is essential "to the support" of "the" building or structure or if in removing it there is material injury to the building or structure.
This can be readily visualized in respect of movable machinery which either supports the building where it is installed or would materially damage it if removed. It is not so easy to understand what is meant by "movable * * * equipment consisting of structures * * * not essential to the support of the * * * structure * * * and removable without material injury thereto".
These literal expressions may be reconciled and rationalized reasonably to mean that, if a movable structure meeting the other statutory tests may be taken away as an entity, it is not real estate; but if it is a qualifying movable structure, i.e., one in which machinery is essential to function, in another structure or building and supports that other structure or removal would cause material damage to that embracing structure, it is real estate.
There is some relevant discussion of the definitive terms of this statutory language in Matter of Martin v. Gwynn (18 A D 2d 851). There the machinery and equipment in issue used in connection with a gravel pit consisted of a hopper, constructed of wood, lined with steel, and resting on the ground, and crushers bolted to a concrete foundation, screens, conveyors, and classifying equipment all on concrete foundations or on steel columns.
In view of the fact that the corporation considered there was taxable under article 9-A, the court noted: "Hence the usual standard of what is personal property does not obtain. The test is whether it is `movable' machinery and equipment and the *233 proof in the record clearly demonstrates that all of it is movable. Not being located in any building, it is not `essential for the support' of `the' building, but stands fastened to the open ground in a movable condition. The history of the statute of exemption shows clearly that the article 9-a franchise tax on certain corporations was intended by the Legislature to be a tax in lieu of personal property taxes on these corporations and therefore the special definitions of section 102 (subd. 12, par. [f]) of what is and what is not personal property should apply to removable equipment used in trade or manufacture."
The statute defining what is not real estate under this special corporate test says nothing about size or bulk or difficulty in removal. It does not, for example, say "readily" removable. It lays down its own special tests for this special kind of tax classification.
It does not say that the removable equipment or machinery must have been "intended" to be removed by the corporation when installed, a test prescribed in this case at Special Term; nor that it is economically feasible to remove it, a test prescribed at the Appellate Division. The difference, therefore, between something very large, such as a blast furnace or a coke oven, in a steel plant and something of more moderate size, such as a stone crusher in a gravel pit, is one, merely, of degree and not of different category in statutory definition.
It is true, for example, as Judge FULD points out, that a huge amount of refractory brick must be taken out and wasted if such structures as the blast furnaces, open hearth furnaces and coke ovens are to be moved. But this brick is not to be treated as brick in the wall of a building. The proof is that it is an expendable item which must in any event be periodically renewed, something like brake shoe lining used in railroads or oil in a car. Proof in the record is that this brick is an "expendable item" and "must be constantly repaired and replaced", some of it "about every three months".
If "movable", and if qualified by corporate use and by dependence on machinery, and if standing as a "structure" or "erection" on its own, either group would fall literally within the statute. The fact that a steel plant is much larger and its equipment correspondingly more bulky spells out no distinction under the words of the statute.
*234 For a broad analysis of the problem of classification of property for the purpose of taxation when owned by a corporation subject to franchise tax see Bell, Classification of Property in New York for Purposes of Real Property Taxation (25 Albany L. Rev. 76; Property of "9-A" Corporations, p. 88), which illustrates the kind of machinery and equipment that, although for general tax purposes would be regarded as real estate, would, in the case of use for business and trade by a 9-A corporation, be regarded as personalty. The statute sets up a highly artificial standard, but for this special purpose that standard, rather than the common-law concept of what is real estate and what personalty, must apply.
The construction of the statute in the direction of excluding from real estate taxes equipment and machinery within these categories and used for the trade has been fairly consistent. In an early case following closely upon the enactment of the first predecessor statute to the present paragraph (f) of subdivision 12 (L. 1917, ch. 726) it was held that machinery and equipment attached to a building, but removable, used in manufacturing chemicals was not real estate (People ex rel. General Chem. Co. v. Cantor, 228 N.Y. 506).
Vats and kettles used in making ice and beer were similarly treated in Matter of Leonhard Michel Brewing Co. v. Cantor (119 Misc. 854), and the machinery in an artificial ice plant in People ex rel. Ruppert Realty Corp. v. Cantor (115 Misc. 519, affd. 204 App. Div. 863).
In the last case, decided in 1921, there is a careful examination at Special Term of the history behind the taxation of this kind of corporate property (pp. 535-537) and the ice plant machinery which was assembled and erected in the building was found capable of being disassembled and removed, and hence was not to be treated for tax purposes as real estate. To similar effect is Matter of Tri-County Asphalt & Stone Co. v. Board of Assessors of Town of Kingsbury (17 Misc 2d 437).
Judge FULD'S statutory interpretation rests in part on the language of former section 3 of the Tax Law as it read before the 1958 recodification which produced subdivision 12 (par. [f]) of section 102 of the Real Property Tax Law.
Because subdivision 5 of section 1602 of that statute provides that the legislative intent in the enactment of the 1958 statute *235 was to effectuate a continuation and restatement of the former law without change in substance or effect, it is suggested that the former statute is controlling.
But a man is entitled to read a currently operative statute affecting his property and rights according to its manifest language and ought not be required to understand what it means by reading an old statute which has been repealed. This seems especially important in respect of a tax statute.
When there is true inconsistency between the old statute and the new one, the latter must be applied. If, for example, the old statute said "black" and the new statute said "white", but nevertheless it was "intended to effectuate a continuation and restatement, without change in substance or effect" of the old statute, "white" should be applied on the ground the general direction for interpretation must yield to the specifically superseding and inconsistent word. "Courts must be slow to hold that statutes do not mean what they say because some time in the past they said and meant something else" (CARDOZO, J., in People ex rel. Rand v. Craig, 231 N.Y. 216, 220).
In the case of ambiguity in the older statute in such a situation as the one before us, one may look to the new superseding statute for enlightenment on the whole continuing legislative intent as to what is continuing "without change". The old words are not the only criteria of the legislative purpose. The new words are equally important. In Goodrich v. Russell (42 N.Y. 177), for example, it was noted that, although statutes relating to the same subject are to be construed together, this rule does not control the language of a new statute by any supposed policy of previous enactments.
If the present statute were flatly contradictory to the old one, the present one would prevail. We need not go that far here. There is an ambiguity in the former statute which is clarified in the present one, and has relevance to the case before us. In its definition of personal property "not * * * liable to taxation", former section 3 included movable machinery and equipment, etc., but not certain items such as boilers, etc., "nor any equipment consisting of structures or erections to the operation of which machinery is not essential".
This series of negatives leaves a certain ambiguity, but stated affirmatively the language seems to mean that any structure or *236 erection to the operation of which machinery is essential is personal property of a 9-A corporation.
The subdivision 12 (par. [f]) enactment clarifies this and restates it more simply this way: "structures or erections to the operation of which machinery is essential". This is quite consistent with the former statute and is something of a clarification of intent.
If this is correct it would seem to follow that movable structures or erections to the operation of which machinery is essential, as well as movable machinery, are not real property.
Whatever may be said about the form and substance of some of the predecessor statutes as being statutes of exemption, especially those in effect while personal property was taxable, it seems quite clear that subdivision 12 of the present statute is not an exemption statute. Even former section 3 of the Tax Law might be regarded as something of a statute of exemption since "personal property * * * shall not be liable to taxation" and the description of what was personal property of a 9-A corporation follows this clause.
But that is not the way the present statute reads. It prescribes all real estate taxable and defines some things as real estate and some things as not real estate. This is a statement of classification and not of exemption. This distinction is very clearly laid down by Chief Judge LEHMAN in Matter of Good Humor Corp. v. McGoldrick (289 N.Y. 452, 455). (See, also, Matter of Allied Chem. Corp. v. Kowal, 9 A D 2d 121, 124, affd. 8 N Y 2d 730; American Locker Co. v. City of New York, 308 N.Y. 264; Matter of Grumman Aircraft Eng. Corp. v. Board of Assessors, 2 N Y 2d 500, 510.)
It was stipulated that all the property in dispute is owned by a corporation taxable under article 9-A of the Tax Law, and that it is all used by the corporation for trade or manufacture. The Special Term made no specific findings as to whether the property in dispute could or could not be moved. The city's proof was that all of it could be dismantled and moved. The board's proof was that some of it could not be moved without destructive dismantling, but its witness admitted it was physically possible to remove the disputed items.
It is a reasonable inference from its opinion that the Special Term found that the disputed equipment and machinery was *237 movable but that it was not intended by the owner it be removed, and the opinion at the Appellate Division is in the same direction.
All of the large structures are physically removable, and machinery is essential to their functions. Thus they literally fall within the statute and their size and weight do not change their special statutory status as personal property when owned and used in the business of this corporation.
The order should be modified by granting the relief sought by the city in full and, as modified, affirmed, without costs.
Ordered accordingly.
NOTES
[1] An equalization rate, which is used for at least 30 purposes (see Principles and Procedures Used in Establishing State Equalization Rates [Jan., 1963], p. 4), has been defined as "reflect[ing] the relationship of the total assessed valuation of taxable property in a locality to the aggregate full value of those properties" and "`indicat[ing] the percentage of full value at which the assessor in a locality is assessing, on the average', taxable property in his locality." (Bucho Holding Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 469, 472, n. 2.) In other words, the board strives to appraise all real property in the State according to the same standard or measuring stick, namely, "full value". It then compares the local assessment rolls with its own figures in order to ascertain the proportion or percentage which the assessed value of property in a particular locality bears to its "full value". This proportion or percentage, termed the "equalization rate", is a crucial factor when subsequent calculations are made by other departments of State Government, for example, in distributing state aid to localities, in apportioning taxes of so-called joint school districts and in determining the limitations on local taxing and borrowing powers. (See, for general discussion, Principles and Procedures Used in Establishing State Equalization Rates [Jan., 1963], p. 4 et seq.)
[2] The earliest version of the provision became part of our law in 1917 when the Legislature first subjected certain corporations to a franchise tax in lieu of a tax on personal property (L. 1917, ch. 726).
[3] Special Term held that certain other items, described as ore bridges and Hulett unloaders (valued by the board at $1,129,000), were exempt from taxation. The State Board did not appeal to the Appellate Division from such holding and these items of property are not before us.