IN THE MATTER OF THE PETITION OF THOMAS H. WALTER TO VACATE CERTAIN ASSESSMENTS.

Where a mortgagee of premises in the city of New York, who took his mortgage before the completion of a local improvement and an assessment upon the premises therefor, foreclosed his mortgage, and the judgment of sale directed the referee appointed to sell, before paying the mortgage, to deduct from the avails of sale the amount of any lien on the premises for assessments; and where on sale the premises were struck off to the mortgagee for a sum less than the assessment and the amount of the mortgage debt, *held*, that in the absence of proof that the mortgagor was personally liable for the deficiency, or in case of such liability that by a resort to it the mortgagee would have been successful in obtaining payment of his debt, he was a party aggrieved within the meaning of the act of 1858 (§ 1, chap. 338, Laws of 1858) "in relation to frauds in assessments for local improvements" in said city, and could move to vacate the assessment. The only proof of the value of the premises was the price at which they were sold and the assessed value; both were much less than the amount of the mortgage and the assessment. *Held*, that it could not be assumed that the premises were worth more than that amount.

Where, for what is practically and in reality one improvement, two separate apportionments and assessments are made, the aggregate amount of

which is more than half of the assessed value of the premises, though such assessments are confirmed at different times, the provision of the act of 1840 (§ 7, chap. 326, Laws of 1840) forbidding assessments "in any one case," exceeding half the assessed value applies, and there is substantial error in the assessments.

The paving of a street or the adoption of a peculiar kind of pavement. is not necessarily so disconnected from the grading, regulating and setting of curb-stones and flagging as to constitute a different and separate improvement.

A resolution of the common council was adopted and approved in April, 1871, directing that a portion of a certain street be regulated and graded, curb and gutters set, and side-walks flagged under the direction of the commissioner of public works. About a year after, two resolutions were adopted and approved, one for setting and resetting curb and gutter stones and flagging and reflagging side-walks on the street, another for paving the street with Belgian or granite block pavement and for laying cross-walks; the portion of the street specified in the last two resolutions was not so great as in the first. A resolution was passed by the department of public parks for the regulating, grading, sewering, paving and improving the street, specifying the same portion as in the first resolution of the common council. Two estimates were made, one for regulating, grading, setting curb-stones and flagging, the other for a "Tilford McAdam roadway." The whole work was done under the resolution of the department of public works. Two assessments were made for the work, upon certain lots, the aggregate of which was more than half of the value of the lots as valued by the ward assessors. In proceedings to vacate the assessments, *held,* that the work was in fact but one improvement for which there should have been but one assessment; but the fact that the work was not all done at once did not necessarily determine that it was of two distinct improvements, nor did the fact that there were different kinds of pavement on different parts of the street; and that, therefore, the assessments were to some extent at least illegal.

Also, *held,* that the court could not take judicial notice of a custom in the city of New York in improving streets, first to regulate and grade, and then to pave, as separate and distinct works; that if such custom exists it must be proved.

*In re Walter* (14 Hun, 148), reversed.

(Argued November 19, 1878; decided December 3, 1878.)

APPEAL from an order of the General Term of the Supreme Court, affirming order of Special Term which denied an application on the part of petitioner to vacate two assessments upon certain lots in the city of New York, the one "for regulating and grading, setting curb and gutter stones and flagging Manhattan street from St. Nicholas avenue

to Twelfth avenue." The other for "paving Manhattan street from avenue St. Nicholas to One Hundred and Twenty-fifth street." The aggregate amount of the two assessments upon each of the lots exceeded half the value of the lot as valued by the ward assessors. (Mem. of decision below, 14 Hun, 148.)

The further material facts appear in the opinion.

*Edmund Coffin, Jr.*, for appellant. The common council had exclusive jurisdiction over the assessment in question. (Laws 1836, chap. 251; Laws 1866, chap. 367, p. 818; Laws 1865, chap. 564; Laws 1867, chap. 697, § 6, p. 1753; Laws 1870, chap. 137, p. 370, § 21, subd. 11; *In re Zborowski*, 68 N. Y., 88; Laws 1873, chap. 335, p. 484; *In re Second Avenue M. E. Church*, 66 N. Y., 395.) The petitioner is a party aggrieved and is entitled to make this petition. (Laws 1858, chap. 338; *Day* v. *Bergen*, 53 N. Y., 404; *Easton* v. *Pickersgill*, 55 id., 310; *In re Phillips*, 60 id., 16; *In re Burke*, 62 id., 224, 228.)

*J. A. Beall*, for respondent. The two assessments were laid for two separate and distinct works and cannot be considered as one. (Rev. Ord., 1859, chaps. 14, 15; *In re St. Joseph's Asylum*, 69 N. Y., 353; *In re Heb. Orphan Asylum*, 70 id., 476; *In re St. Mark's Church*, 11 Hun, 381.) The department of public parks was fully authorized by law to direct the improvement of Manhattan street. (Laws 1866, chap. 367, §§ 3, 7; Laws 1867, chap. 697, § 6, p. 1753.) If there was a defect or lack of authority in laying the assessments they will not be vitiated thereby. (Laws 1874, chap. 313, p. 366; *In re Mayor*, 50 N. Y., 504; *In re Agnew*, 4 Hun, 440; *In re Zborowski*, 68 N. Y., 104.) The burden of proof was on the petitioner. (*In re Bassford*, 50 N. Y., 509.)

FOLGER, J. By the act of 1858, (Laws of 1858, chap. 338, p. 574) *the party aggrieved*, in the proceedings relative

to any assessment for local improvement in the city of New York, may apply to vacate the same.

The first question arising in the case in hand, is whether the petitioner falls within the meaning of the phrase, "the party aggrieved." A person aggrieved, by an act or an omission, is one injured thereby. Doubtless the injury sustained must not be a remote and consequential result, but a direct one. The owner of the land affected by the assessment is directly injured thereby, for his property is rendered so much the less valuable to him ; it is worth so much the less in the market ; so much as is the assessment, is taken from his other means, to relieve his land of the assessment ; or the land itself is sold or leased by virtue of the lien. We have held, that one who was the owner of the lands when the assessment was laid and confirmed, and who was, at the time of the motion to vacate it, liable for the payment of it, was within the statute (*In re Philips*, 60 N. Y., 16) ; and it was said that if he was once the owner, and might be held to indemnify a grantee against the assessment, he was a party legally aggrieved by it, if it was fraudulent or illegal. In such case, the person would be injured through a covenant he had given. To the same effect is *In re Burke* (62 N. Y., 224), where it was held that a lessee who is obligated to pay assessments on the demised premises, the obligation remaining upon him at the time the assessment is confirmed, is a party aggrieved. He loses nothing in the diminished value of the land in market, by reason of the lien put upon it ; but he will lose something from his own property or means, if he must pay it.

In the case in hand, the petitioner, with another person, took a mortgage upon the premises, to secure the payment of $3,320. This was in 1872, before the work was finished for which the assessments were afterwards laid. The mortgage was, at a time not given in the petition, or shown in the proofs, assigned to the petitioner, and became wholly his. The two assessments were laid and confirmed, and thereafter the petitioner foreclosed his mortgage, and the judgment of

sale directed that the referee to sell, before paying the mortgage debt, should deduct from the avails of the sale the amount of any lien on the premises for assessments. On the sale the premises were struck off and sold to the petitioner for a sum less than these assessments, and less than the mortgage debt. He has become the owner of the premises, but seemingly subject to a lien, by way of assessment, which the amount of his bid will not pay ; and to make the land which he has bought saleable by him he must pay off or otherwise remove the assessments or give covenant against them. We may not assume that the land is worth more than the assessments and the mortgage debt in addition. The amount at which it was sold, and the amount at which it was assessed by the ward assessors, which two items of evidence are the only proof in the case of the value of the lands, show that it is worth much less. So that the petitioner has the title to the land, worth by the proof but $1,500 more than the amount of these assessments ; which he must pay if they are legal and valid, and suffer considerable loss on his mortgage debt. He must take from his means, other than these premises, to make such payment ; and his case does not differ, in immediate result, from that of *Philips* and *Burke*, in the matters above cited. Hence he is a party aggrieved by those assessments, if there is substantial error or fraud in the laying of them.

It is argued, however, by the respondents, that the petitioner is not injured because he can have the title to the land, on paying off the assessments and taking the referee's deed ; and still has a judgment for the deficiency arising upon the sale. But it does not appear from the proofs in the case either that the petitioner has such judgment, or that he was entitled to such judgment. He has appended to his points the judgment-roll in the foreclosure suit ; wherefrom it appears that there was a bond to which his mortgage was collateral, and, *prima facie*, it appears that he had besides the security of his mortgage, a right to a judgment for deficiency against the obligor and a resort to his per-

sonal means. If this resort would have been successful in obtaining payment for his debt, it may well be queried whether he would be injured by the assessments. If he would not be successful there was injury, as we have shown above. The application of these remarks will be made before we conclude.

The next question is, was there substantial error in laying them? It appears that the two assessments, when aggregated, amount to more than one-half of the assessed value of the lots as the same were valued by the ward assessors. The act of 1840 (Laws of 1840, chap. 326, p. 273, § 7), declares that estimates and assessments for any improvements shall in no case be more than one-half the value of the premises as valued by the assessors of the ward in which they lie. If these assessments, though resulting from separate apportionments, and though confirmed at different times, are for the expense of what is practically and really one improvement, then the phrase from the act of 1840, "in any one case," applies, and there was substantial error in the assessment.

It appears that by a resolution of the common council, adopted by one board 12th December, 1870, by another 24th April, 1871, and approved by the mayor 27th April, 1871, Manhattan street, from avenue St. Nicholas to the Hudson river, was to be regulated and graded, the curb and gutter stones set, and the side-walks flagged where not already done, under the direction of the commissioners of public works; that about a year after, like resolutions were adopted and approved; one for setting and resetting curb and gutter stones, and flagging and reflagging side-walks on Manhattan street, from One Hundred and Twenty-fifth street to the North river; and one for paving Manhattan street, from One Hundred and Twenty-fifth street to the North river, with Belgian or granite block pavement from curb to curb, and laying cross-walks, under the same direction. It will be noticed, that in the first and second of the resolutions above given, nothing is said of paving Manhattan street; and that

in the third there is.   It will be noticed also, that in the second and third resolutions the territory covered is Manhattan street, from One Hundred and twenty-fifth street to the North river, while in the first it is Manhattan street, from avenue St. Nicholas to the Hudson (or North) river.   There is also in the evidence a resolution of the department of public parks, passed on 2d May, 1871, for the regulating, grading, sewering, *paving*, and improving Manhattan street, from Twelfth avenue to Avenue St. Nicholas.   We infer that Twelfth avenue is substantially the same *terminus* as the Hudson or North river.   These are all the resolutions of any body, which appear in the case, directing the work for which the assessments have been made.   And it will be noticed that the one resolution of the department of public parks covers and directs, by general names and descriptions, all the work done on Manhattan street, including paving, for which these assessments have been made.   When we come to the estimates for the work done, we find one dated June 25, 1875, for the regulating, grading, setting curb-stones, and flagging Manhattan street from Avenue St. Nicholas to Twelfth avenue.   We find another dated May 20, 1876, for the superstructure (Telford-McAdam roadway) of Manhattan street, from the westerly line of Avenue St. Nicholas to the southerly line of One Hundred and Twenty-fifth street.   It is to be noticed of these, that they are for work in part, not provided for by either resolution of the common council, and not provided for, in terms, as to the special kind of pavement, by the resolution of the department of public parks.   To be sure, one resolution of the common council provides for the regulating and grading of Manhattan street, the setting of curb and gutter stones, and the flagging of it from Avenue St. Nicholas to the Hudson river ; but another is for the territory only from One Hundred and Twenty-fifth street to that river, and the resolution for paving is over the same space, and with Belgian or granite block pavement.   But the estimate is for Telford-McAdam roadway, from St. Nicholas avenue to the south line of One Hundred and Twenty-fifth street.

If the paving of a street is so disconnected from other work upon a street, in necessity and effect, as to be a different and separate improvement from grading, regulating, setting of curb and gutter stones, and flagging, or if the adoption of a peculiar kind of pavement is so, then there may be said to have been two classes of improvement upon this street. If they are not so disconnected, then it cannot be said that there was that lapse of time between the ordering of them, as to make them distinct. One resolution of the common council was in 1871. The other two were in 1872, and were proceeding through the two boards of aldermen at the same time, from April 8, 1872 to May 22, 1872; while there is but one resolution of the department of public parks, by which the whole work, paving as well as the rest, was directed. And the whole work was done under the direction of that department and its successor, the department of public works. So that that resolution seems to be the acknowledged source of authority for the work. That it was not all done at once does not necessarily determine that it was of two distinct improvements. Necessarily, regulating and grading must precede paving, and so must, to some degree, setting of curb and gutter stones. Nor is the fact that there were different kinds of pavement, on different parts of the street, conclusive that these were distinct improvements.

We are then unable to conclude, from the record before us, that the work, for which these two assessments were laid, was necessarily two distinct improvements, and that it was not one improvement. If one improvement, then there should have been but one assessment; and if but one assessment, it could not have exceeded the half assessed value of the lots; and as it has exceeded that, it is, in some extent, at least, illegal. It was laid without power to do so, and in direct violation of statutory restriction and prohibition, and there is substantial error in it, not to say fraud.

It is urged by the respondents that it is a well-known custom, in improving the streets of New York city, first to regulate

and grade, and then to pave, as separate and distinct works. We are asked to take judicial notice of this custom. We cannot do that. If there be such a usage, it must be proven, and shown to come up to the requirements for a lawful and prevalent custom. And so must the ordinances of the common council be proven.

We conclude then, that these assessments, as they now appear to us, are erroneous, and that the order denying the petition must be reversed.

But we are not satisfied but that the respondents, upon another hearing, may show that the petitioner is not a party aggrieved in as much as he may have a good judgment for deficiency; and may also show that the assessments were made for what were really different improvements.

The other questions made upon the argument we will not now consider.

The orders denying the motions to vacate should be reversed, and a rehearing ordered.

All concur, except CHURCH, Ch. J., absent.

Ordered accordingly.