In the Matter of WALDBAUM, INC., Respondent, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Appellants.

Second Department, September 19, 1988

**APPEARANCES OF COUNSEL**

*Peter L. Zimroth, Corporation Counsel (Edith I. Spivack, Joseph I. Lauer* and *Lisa Kaplan* of counsel), for appellants.

*Peter H. Brandt* and *Hubert J. Brandt (Richard A. Steinberg* and *Willa I. Lewis* of counsel), for respondent.

**OPINION OF THE COURT**

BRACKEN, J. P.

The petitioner, Waldbaum, Inc. (hereinafter Waldbaum), has brought several proceedings pursuant to Administrative Code of the City of New York § 11-231 in order to challenge, for various years between 1971 and 1982, the real estate tax assessments of certain real property leased by Waldbaum from a third party. The sole question on appeal is whether Waldbaum is aggrieved by those tax assessments so as to have standing to bring these proceedings *(see,* Administrative Code of City of New York § 11-231 [a]). We conclude that Waldbaum has standing to challenge those assessments which resulted in Waldbaum's becoming legally obligated to expend certain sums of money. However, Waldbaum lacks standing to challenge those annual assessments which did not have a direct adverse effect on Waldbaum's pecuniary interest. Therefore, the matter must be remitted to the Supreme Court, Queens County, for further proceedings in order to determine which of the several tax assessments under review had such an effect.

I

On or about July 6, 1961, Waldbaum 45, Inc., a New York corporation and a wholly owned subsidiary of the petitioner Waldbaum, entered into a lease with Carlyle Shopping Center, Inc. (hereinafter Carlyle). Pursuant to this lease, Waldbaum rented certain store space for the operation of a supermarket at or near the intersection of Kissena Boulevard and Elder Avenue in Queens, New York.

Pursuant to paragraph 42 (a) of the lease, the tenant agreed to pay Carlyle a minimum annual rent of $51,750. In addition to this minimum annual rent, the tenant was obligated, pursuant to paragraph 42 (b) of the lease, to pay an additional sum, designated as *"percentage rent",* equal to 1½% of the amount by which Waldbaum's annual gross receipts exceeded the sum of $3,450,000.

Further, the tenant was legally obligated, pursuant to the

terms of paragraph 58 of the lease, to pay "as additional rent", a sum equal to 49% of the amount by which the annual real estate tax imposed on the premises owned by Carlyle exceeded a designated base amount. Pursuant to paragraph 69 of the lease, the amount of money payable as "percentage rent" pursuant to paragraph 42 (b) of the lease was to be reduced by the amount payable as "additional rent" pursuant to paragraph 58. In other words, any sum of money paid under the tax escalation clause served as a credit against amounts due as "percentage rent".

On appeal, Waldbaum claims that it paid $15,935 in 1977, $14,532 in 1978 and $14,536 in both 1979 and 1980 as "real estate taxes". However, these figures represent sums calculated pursuant to paragraph 58 of the lease, that is, the tax escalation clause. These figures do not reflect the operation of paragraph 69 of the lease. The actual net effect of the provisions in the lease was to cause Waldbaum to pay, in the years 1977-1980, the amounts represented in the following chart, the accuracy of which was stipulated to by the parties:

| "Year Ending December 31 | Sales Volume In Excess of $3,450,000 | Tax Escalation Payments Pursuant to ¶ 58 | Credit for Percentage Rent under ¶ 69 | Actual Net Effect of ¶ 58 |
|---|---|---|---|---|
| "1977 | $482,697 | $15,935 | $7,240 | $8,695 |
| "1978 | 625,704 | 14,532 | 9,386 | 5,146 |
| "1979 | 852,337 | 14,536 | 12,785 | 1,751 |
| "1980 | 853,378 | 14,536 | 12,801 | 1,735". |

Waldbaum originally brought several proceedings in order to challenge the real property tax assessments for the several years between 1971 and 1982. In September of 1984 the parties stipulated that six of the proceedings then pending (i.e., the proceedings relating to tax years 1974-1975, 1975-1976, 1976-1977, 1977-1978, 1979-1980, and 1980-1981) would be consolidated. Several other proceedings were deemed "not pending". This stipulation was "So Ordered" by the court. A seventh proceeding, relating to the tax year 1981-1982 was commenced, but the petitioner's attorney concedes that this proceeding was brought by mistake.

By notice of motion dated December 4, 1985 the petitioner Waldbaum moved, *inter alia,* for partial summary judgment determining that it had standing to bring the six consolidated proceedings.

The appellants cross-moved to dismiss the six consolidated proceedings, as well as the seventh "mistakenly filed" proceed-

ing, on the ground that the petitioner was not an aggrieved party. In support of the cross motion, counsel for the appellants submitted an affirmation which stated that Waldbaum does not receive any tax bills, and that the real estate taxes relative to Carlyle's property are paid directly to the city by Carlyle. The appellants' counsel also noted that Carlyle had never assigned to Waldbaum its right to bring a proceeding to review the assessments. It was argued that the effect of the tax assessment on the petitioner was "too remote" and that the petitioner therefore lacks standing.

The appellants' attorney also noted that the petitioner had not claimed to have paid any amount in real estate taxes during the calendar years 1973 through 1976. In a reply affirmation, the petitioner's counsel demonstrated that amounts due under the tax escalation clause exceeded amounts due as percentage rent for the calendar years 1977, 1978, 1979 and 1980. No similar demonstration was made with respect to the years prior to 1977. A signed stipulation was later submitted to the court in which the attorneys for the respective parties agreed that the "Actual Net Effect" of the tax escalation clause was to cause Waldbaum to pay, in the years ending December 31, 1977, 1978, 1979 and 1980, the sums of $8,695, $5,146, $1,751 and $1,735, respectively. No other year was mentioned in that stipulation.

The Supreme Court, Queens County (Kassoff, J.), determined that the petitioner was an aggrieved party because its pecuniary interest had been affected (132 Misc 2d 364). The court granted partial summary judgment in favor of the petitioner, declaring that it had standing to bring the subject proceedings. The appellants' cross motion to dismiss the six consolidated proceedings and the seventh mistakenly filed proceeding, was denied. This appeal followed.

## II

On appeal, the appellants argue that Waldbaum is not an "aggrieved party" and thus lacks standing to bring these tax certiorari proceedings. The appellants contend that "it was Carlyle which received the tax bill each year and it was Carlyle, not petitioner, which paid the taxes directly to the City". Pursuant to this argument, a lessee of real property which is legally obligated to pay, as rent, all or part of the real property taxes imposed on its lessor, would lack standing to challenge the assessment upon which the tax is based. The

only party which would have standing to bring a tax certiorari proceeding, pursuant to this argument, would be the lessor owner which actually paid the tax, even though that expense is, in whole or in part, passed along to the lessee. This argument contravenes the basic principle, which has been a matter of settled law in this State for over a century, that "a lessee who is under covenant to pay an assessment, is aggrieved when an invalid assessment is made" *(Matter of Burke, 62 NY 224, 228).*

In *Matter of Burke (supra)* the Court of Appeals held that a lessee who is bound by his lease to pay an assessment levied upon a premises is an aggrieved party. This rule has been consistently followed *(see, Matter of Walter, 75 NY 354, 357; Ames Dept. Stores v Assessor of Town of Evans, 126 AD2d 990; Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, 114 AD2d 726, 727; Matter of Ames Dept. Stores v Assessor of Town of Concord, 102 AD2d 9; Matter of McLean's Dept. Stores v Commissioner of Assessment of City of Binghamton, 2 AD2d 98, 101).*

None of these cases supports the appellants' argument that it is only the party who actually pays the tax to the tax authorities who is aggrieved, and that any third party who is obligated to reimburse the payor of the tax is not aggrieved. This precise argument was, in fact, rejected by the Appellate Division, Third Department, in *Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush (supra).* In that case, a lessee of property had agreed to pay *"as an element of rent,* 'all taxes and assessments which will or may become a lien on [the property]' " *(Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, supra,* at 727 [emphasis added]). The court held that the lessee had standing, stating that "it is of no material consequence that aggrievement as the result of an assessed valuation originated in contract" *(Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, supra,* at 728). We agree fully with this statement. A party is equally aggrieved whether its obligation to pay a sum of money arises directly under the tax statutes, or under a contractual agreement, and whether the sum of money expended is paid as tax, or as an element of rent.

It is also immaterial that Waldbaum was contractually obligated to pay only a fraction of the tax imposed. The central question to be decided in determining a party's standing is whether its pecuniary interest has been directly affected. The courts never have created arbitrary distinctions

based on the degree to which the petitioner's pecuniary interest is affected, and ought not do so now. A party should not be deprived of an opportunity to challenge a wrongfully calculated tax, solely because the amount of the tax is considered to be trifling when measured against some nebulous standard. We therefore are in full agreement with the rationale of *Matter of Ames Dept. Stores v Assessor of Town of Concord (supra)* allowing a party which is contractually obligated to pay a stated fraction of the real property tax imposed to have standing to challenge the underlying assessment.

It is true that the contractual formula pursuant to which the amount of money payable by Waldbaum on account of the tax imposed on Carlyle is somewhat more complicated than that presented in the case of *Matter of Ames Dept. Stores v Assessor of Town of Concord (supra)*. Waldbaum is not obligated to pay a percentage of the tax imposed, but is instead obligated to pay a percentage of the amount by which the tax imposed exceeds a base amount. The effect, however, is the same. Further, Waldbaum is allowed to credit against its percentage rent obligation amounts payable under the tax escalation clause. As a result of this credit, no tax-related obligation will arise in those years in which the amount payable under the tax escalation clause is exceeded by the amount payable as percentage rent.

The evidence in the record establishes clearly that, in the years 1977 through 1980, the gross sales at the store in question were such that the amounts payable as percentage rent did not exceed the amounts payable pursuant to the tax escalation clause. In those years, Waldbaum became obligated to pay certain sums because of the size of the tax assessment, and it is only fair that Waldbaum should be allowed to challenge the tax assessment as applied in those years. By the same token, the record contains no indication that Waldbaum became obligated to pay any sum of money by operation of the tax escalation clause during the years preceding 1977.

In reaching this conclusion we find that the holding of the court in *Matter of Mott Haven Furniture Co. v Finance Adm'r of City of N. Y.* (130 Misc 2d 667) is readily distinguishable. In that case, the petitioner was the lessee of certain property and had a contractual agreement to pay as "additional rent" *(supra,* 130 Misc 2d, at 668; *cf., Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, supra)* a stated fraction of the amount by which the annual real estate tax imposed upon the lessor's property exceeded a stated base

amount *(cf., Matter of Ames Dept. Stores v Assessor of Town of Concord, supra).* Certiorari proceedings were commenced by the owner of the property (covering the years 1976 through 1984) as well as by the lessee (covering the years 1976 through 1980 and 1981 through 1983) *(Matter of Mott Haven Furniture Co. v Finance Adm'r of City of N. Y., supra,* at 667-668). The tax authorities were willing to make a single refund upon a reduction of the assessment in settlement of the proceedings brought by the lessor for the years 1982 through 1983 and 1983 through 1984, on condition that all proceedings, including those filed by the lessee, be discontinued. This settlement was prevented, however, by lessee petitioner's failure to discontinue its entirely duplicative proceedings. The question before the court, upon the city's motion to dismiss, was "whether a commercial tenant has standing to sue the Tax Commission under RPTL 704 and Administrative Code of City of New York § 166-1.0 (a) as a consequence of a tax escalation clause contained in its lease *when the owner of the property has also filed" (Matter of Mott Haven Furniture Co. v Finance Adm'r of City of N. Y., supra,* at 669 [emphasis added]).

In the present case, Carlyle filed certiorari proceedings for the tax years 1974 through 1977. However, the statement by the petitioner on appeal that these proceedings have not been prosecuted is uncontradicted. We are thus not presented with a situation similar to that presented in the *Matter of Mott Haven Furniture Co.* case *(supra),* where the lessor and lessee were acting at cross purposes. In any event, we believe that the procedural complications which may arise when two or more aggrieved parties, seeking identical relief, disagree as to the tactical decisions to be made with respect to the conduct or settlement of litigation are not so insurmountable as to warrant a holding that one of those parties has no standing.

Our decision today is consistent with the approach taken in other jurisdictions, as reflected most notably in the recent decision of the Supreme Court of New Jersey in *Village Supermarkets v Township of W. Orange* (106 NJ 628, 525 A2d 323). The New Jersey statute at issue in that case (NJ Stat Annot § 54:3-21) provided that any "taxpayer feeling aggrieved by the assessed valuation of his [real] property" could institute a proceeding in the New Jersey Tax Court *(Village Supermarkets v Township of W. Orange,* 106 NJ 628-630, 525 A2d 323, 324, *supra).* The plaintiff which claimed to have been aggrieved in the *Village Supermarkets* case was a tenant, much like petitioner Waldbaum, which was required to pay to its

landlord, "as additional rent", a sum equal to the tax imposed on the building it occupied, as well as a sum equal to a proportionate share of the tax imposed on the common areas of the shopping center in which the building was located *(Village Supermarkets v Township of W. Orange, supra,* 525 A2d, at 324-325). The court held that the plaintiff tenant could, under certain circumstances, maintain a proceeding on notice to and in the name of the landlord, in order to challenge the tax assessment.

In *Village Supermarkets v Township of W. Orange (supra,* 525 A2d, at 324-325), the landlord had intervened in the proceeding and had requested a dismissal of the tenant's complaint. Thus, the court was confronted with a dispute between two parties, both of whom had standing to bring a tax certiorari proceeding, over whether a proceeding should be brought at all, and if so, which party should bring it *(cf., Matter of Mott Haven Furniture Co. v Finance Adm'r of City of N. Y.,* 130 Misc 2d 667, *supra).* The court enumerated certain factors which it held should govern resolution of a dispute of that nature *(Village Supermarkets v Township of W. Orange, supra,* 525 A2d, at 326-327). In the present case, there is no dispute between Waldbaum and Carlyle, or any of the other tenants, as to whether Waldbaum should be permitted to prosecute this proceeding. Thus, we find no need to remit this matter for consideration of those factors outlined in the *Village Supermarkets v Township of W. Orange* case, e.g., whether the petitioner Waldbaum will adequately represent the interest of the landlord and other tenants. Unlike the *Village Supermarkets v Township of W. Orange* case, the only party challenging Waldbaum's standing is the taxing authority; neither Carlyle nor any of Waldbaum's cotenants have sought to intervene or to dismiss the present proceeding, and there is thus no reason to assume that Waldbaum cannot, by pursuing its own interests, adequately protect those with similar interests.

Our dissenting colleagues would dismiss all of the present proceedings upon the basis that any pecuniary injury suffered by Waldbaum was a "remote" rather than "direct" result of the tax assessments imposed for the years 1977 through 1980. What is not made explicit in the dissenting opinion, however, is the standard by which a particular pecuniary injury, which is concededly related to a tax assessment, is to be judged as so "remote" as to warrant depriving an aggrieved taxpayer of the right to seek redress in a court of law.

Although the holding of the Appellate Division, Third Department, in *Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush* (114 AD2d 726, *supra)* is referred to disapprovingly in the dissent, we do not take this to mean that our dissenting colleagues are actually advocating a contrary rule. As we noted above, the question of whether a party is forced to pay a sum of money as "additional rent" rather than as "tax" has no bearing, in logic, upon the question whether that party has suffered a pecuniary injury. A tenant, such as Waldbaum in the present case or such as the petitioner in *Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush* (114 AD2d 726, *supra)* is not likely to feel any less aggrieved because the money paid by it on account of a tax assessment was paid to its landlord rather than directly to the taxing authority. It would be manifestly unjust to hold that a tenant, who pays 100% or 50% or any other percentage of the taxes imposed upon the premises owned by its landlord, may not bring a tax certiorari proceeding, solely because its obligation is payable as "additional rent", while at the same time allowing another tenant, who may suffer less actual pecuniary injury, but whose obligation is payable as tax, to bring such a proceeding.

The dissent also intimates that Waldbaum's standing to challenge those annual tax assessments which concededly did have an adverse pecuniary impact upon it is somehow undermined by the fact that Waldbaum failed to show that a similar adverse pecuniary impact resulted from other, earlier annual tax assessments. While we agree, as a matter of fact, that the effect of paragraph 69 of the subject lease is to relieve Waldbaum of any tax-related obligation in some years, we are at a loss to understand why this circumstance should deprive Waldbaum of standing to challenge the assessments for those years in which paragraph 69 had no such effect.

The dissent also places some weight upon the fact that Waldbaum's tax liability is determined by reference to a percentage of an amount by which the total tax imposed exceeds a base amount rather than by reference to a percentage of the total tax imposed itself. Again, we cannot accept the argument that this circumstance justifies characterizing the pecuniary harm suffered by Waldbaum as "remote" rather than "direct". We do not think that the relationship which exists in this case between the amount of the tax assessments for several different tax years on the one hand, and the amounts of money which the petitioner became legally obli-

gated to pay on account of those assessments on the other, should be considered "remote" rather than "direct" simply because the mathematical formula by which that relationship is expressed is slightly more complex than that involved in *Matter of Ames Dept. Stores v Assessor of Town of Concord* (102 AD2d 9, *supra).*

While we acknowledge that certain practical difficulties may arise as a result of our recognition of the standing of tenants such as Waldbaum to bring tax certiorari proceedings, such difficulties are absent in this particular case, where there is no indication that Waldbaum's landlord, or any of its cotenants, do not approve of its actions. The avoidance of such procedural difficulties in other cases would not, in any event, justify the formulation of a rule, such as that proposed by our dissenting colleagues, which would deprive seriously aggrieved tenants of the right to challenge an illegal or arbitrary real estate tax assessment. While such a rule may commend itself to those whose primary concern is to free the courts of congestion, it should be viewed with skepticism by those who believe that, as a general matter, the courts should be open to anyone who has been harmed by improper, arbitrary or illegal government action.

## III

To sum up, we hold that Waldbaum has standing to challenge any tax assessment which, by the operation of paragraphs 58, 69 and 42 (b) of its lease, caused it to come under a legal obligation to pay additional rent. Pursuant to this standard, it is apparent that some of the present proceedings may be subject to dismissal.

It is not absolutely clear from the papers submitted by the parties which of the several tax assessments under review actually affected Waldbaum's pecuniary interest. For example, while Waldbaum claims to have owed $15,935 to its landlord pursuant to the tax escalation clause for the calendar year 1977, the evidence in the record does not reveal with certainty whether this amount was calculated, as we might assume, with reference to the real property assessment for fiscal year 1976-1977. If it was, then the petitioner has standing to challenge that assessment. Similarly, assuming that the amounts owed by the petitioner pursuant to the tax escalation clause for the calendar years 1978, 1979 and 1980 were calculated with reference to the assessments for fiscal years

1977-1978 and 1979-1980, then Waldbaum would have standing to bring those proceedings.

On the other hand, those proceedings which relate to earlier tax assessments, e.g., the one for fiscal year 1974-1975, may well be subject to dismissal. While the petitioner has demonstrated that it suffered pecuniary injury as a result of the assessments of the subject property and that such pecuniary injury occurred in four calendar years, including calendar year 1977, there is no evidence in the record from which it may be conclusively determined whether the additional rent paid in calendar year 1977 was calculated with any reference to the taxes levied pursuant to the assessment for fiscal year 1974-1975. It is also unclear whether a single assessment could have resulted in the levying of a tax which affected the petitioner's rent in two different calendar years.* A hearing is therefore necessary in order to permit the court to determine exactly which of the present certiorari proceedings, if any, should be dismissed pursuant to the proper standard.

Therefore, the order of the Supreme Court should be modified, by (1) adding to the first decretal paragraph thereof, after the words "Section 166-1.0 of the Administrative Code of the City of New York" the words "and has standing to challenge any tax assessment which, by the operation of paragraphs 58, 69 and 42 (b) of its lease, caused it to come under a legal obligation to pay additional rent" and (2) deleting the third decretal paragraph thereof and substituting therefor a provision granting that branch of the cross motion which is addressed to the proceeding challenging the assessment for the tax year 1981-1982, and as so modified, the order should be affirmed insofar as appealed from, without costs or disbursements, and the matter should be remitted to the Supreme Court, Queens County, for a hearing with respect to the remaining branches of the cross motion.

HARWOOD, J. (concurring in part and dissenting in part).

We must determine on this appeal whether a lessee's obligation to pay "additional rent" in an amount related to but not determined by real property tax assessments confers standing on the lessee to challenge the validity of the assessments. I

---

* We note that pursuant to New York City Charter § 1519 (1) (a), real property taxes may be paid in equal installments on the first day of July, October, January and April of each fiscal year. It therefore seems possible that one annual assessment could have affected Waldbaum's rental obligations during two calendar years.

conclude that it does not and therefore vote to reverse the order insofar as appealed from and dismiss the proceedings.

By agreement dated July 6, 1961, the petitioner, through a wholly owned subsidiary, became a 20-year lessee of certain store space constituting approximately 49% of the landlord's premises. By the lease, the petitioner was obligated to pay an annual *"minimum rent"* of $51,750 and, as a *"percentage rent"*, a sum equal to 1½% of its gross annual sales over a specified base amount. It was also obligated to pay, as "additional rent", an amount equal to 49% of the real estate taxes imposed against the entire property which exceeded the "base amount" of taxes assessed at the time the entire property became fully rented. However, pursuant to paragraph 69 of the lease, payment of "additional rent" pursuant to the tax escalation clause was credited against "percentage rent to be paid by [petitioner] for the same year". Thus, if real estate taxes rose above the base amount, a payment was required pursuant to the tax escalation clause, but that payment reduced the amount, if any, due under the *"percentage rent"* clause.

By multiple proceedings, the petitioner challenged the validity of tax assessments for tax years between 1971 and 1982. The petitioner's landlord filed duplicative certiorari proceedings for some of those tax years, but those proceedings, as well as some commenced by the petitioner, have apparently been abandoned. Presently before us are the now consolidated proceedings commenced by the petitioner concerning tax years 1974-1975 through 1980-1981 (except for 1978-1979) and a proceeding concerning the 1981-1982 tax year which the petitioner acknowledges was brought by mistake.

In 1985, the petitioner made application, *inter alia,* for partial summary judgment declaring that it had standing to challenge the assessments of the tax years addressed by the consolidated proceeding. The appellants cross-moved for an order dismissing that proceeding and the proceeding concerning the 1981-1982 tax year. There is no indication in the record made on these motions as to whether the petitioner was obligated to pay additional rent pursuant to the tax escalation clause before 1977, perhaps because the taxes did not until then rise above the base amount. By stipulation, the parties established that in each of the calendar years 1977 through 1980 the petitioner owed its landlord, pursuant to the tax escalation clause, a sum which ranged between $15,935 for 1977 and $14,536 for 1980. However, because of the credit

against the amount due pursuant to the percentage rent clause, the amount actually paid the landlord as "additional rent" ranged from $8,695 in 1977 to $1,735 in 1980. No figures were provided for 1981, the final year of the lease.

We recognize that all tax laws are to be construed against the taxing authority (see, e.g., People ex rel. Bingham Operating Corp. v Eyrich, 265 App Div 562). We also recognize that, in order to provide relief to unfairly burdened "taxpayers" (see, Matter of Ames Dept. Stores v Assessor of Town of Concord, 102 AD2d 9, 11), any person or corporation "aggrieved" by a tax assessment has standing to challenge its validity (see, Real Property Tax Law § 704 [1]; Administrative Code of City of New York § 11-231). However, to determine that the petitioner here is "aggrieved" by tax assessments when the payment allegedly constituting the pecuniary harm is measured not by the amount of the tax but by the petitioner's gross sales, is to depart from the well-established rule that the pecuniary injury caused by a complained-of assessment must be "direct" and not "remote and consequential" (see, Matter of Walker, 75 NY 354, 357; see also, Matter of Suburbia Fed. Sav. & Loan Assn. v Mayor of Inc. Vil. of Lynbrook, 76 AD2d 841; cf., Matter of Ames Dept. Stores v Assessor of Town of Concord, supra).

As noted in the majority opinion, a lessee who is under a covenant to pay an assessment is aggrieved when an invalid assessment is made (Matter of Burke, 62 NY 224; see, Ames Dept. Stores v Assessor of Town of Evans, 126 AD2d 990; Matter of Caldor, Inc. v Board of Assessors, 104 AD2d 883; Matter of McLean's Dept. Stores v Commissioner of Assessment of City of Binghamton, 2 AD2d 98). That rule applies where, because the lessee occupies less than all of the assessed premises, it has covenanted to pay only its pro rata share of a tax, although in the cases so holding, the leases in which that covenant was contained also afforded the lessee the right to contest the assessment in the name of the lessor (Matter of Ames Dept. Stores v Assessor of Town of Concord, supra; cf., Matter of Caldor, Inc. v Board of Assessors, supra). In virtually all of the cases where a lessee was determined to be aggrieved by a tax assessment, the lessee was directly obligated to pay a "tax" rather than, as here, "rent" calculated pursuant to a fairly complicated formula based only in part on the amount of the tax (see, e.g., Matter of Burke, supra; Ames Dept. Stores v Assessor of Town of Evans, supra; Matter of McLean's Dept. Stores v Commissioner of Assessment of City of Binghamton,

*supra).* The only apparent departure is *Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush* (114 AD2d 726), by which we are not bound and with which I do not entirely agree.

In *Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush (supra,* at 727), the Appellate Division, Third Department, held that a lessee obligated to pay " 'all taxes and assessments' " was aggrieved within the meaning of RPTL 704 (1), even though the obligation was denominated as an "element of rent". However, the Third Department held that the petitioner was aggrieved because it was obligated to make payment in an amount "determined by the tax assessment on the property" *(Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, supra,* at 728), thereby implicitly recognizing that the pecuniary injury must result directly from the complained-of assessment. Apart from the fact that the petitioner here is not directly obligated to pay a tax *(see, e.g., Matter of Burke, supra),* and apart from the fact that the petitioner does not enjoy a contractual right to bring a tax review proceeding *(see, e.g., Matter of Ames Dept. Stores v Assessor of Town of Concord, supra),* a scrutiny of the various provisions of the petitioner's lease *(cf., Matter of Burke, supra,* at 228) makes clear that amounts owed by the petitioner as "additional rent" were not "determined by the tax assessment on the property" *(Matter of Big "V" Supermarkets v Assessor of Town of E. Greenbush, supra,* at 728) but rather by the respective base amounts of, and the interplay between, the tax escalation and percentage rent clauses.

That petitioner's "pecuniary harm" in the form of additional rent was not a direct result of a tax assessment is underscored by the majority holding that the petitioner has standing to challenge the tax assessments for some years, but not others. Its primary rationale for distinguishing, for standing purposes, among the various tax years is that no "tax-related" obligation could arise in years in which the amount due pursuant to the tax escalation clause was exceeded by the amount payable as percentage rent. In other words, although an amount was nominally due pursuant to the tax escalation clause, whether the petitioner was aggrieved by having to pay it is determined by whether its gross sales were of sufficient volume to warrant payment of a greater percentage rent. I conclude not only that the volume of the petitioner's gross sales is too remote from the tax assessment to serve as the predicate for a tax certiorari proceeding but also that such a

predicate would impose on the tax authority and the courts the burden of examining the lessee's gross receipts for each year in order to determine the threshold question of standing.

Administrative convenience is no basis for denying standing to parties otherwise aggrieved (cf., Matter of Ames Dept. Stores v Assessor of Town of Concord, supra). But by the majority's departure from the rule that in order to have standing in a tax certiorari proceeding, the petitioner must have suffered a pecuniary injury directly resulting from the assessment complained of, virtually every commercial tenant whose obligation to pay rent is but marginally related to the owner's obligation to pay a tax is now permitted to challenge the taxing authority's fixation of the latter's tax obligation. No such effect is intended by Real Property Tax Law article 7.

RUBIN and SPATT, JJ., concur with BRACKEN, J. P.; HARWOOD, J., concurs in part and dissents in part and votes to reverse the order insofar as appealed from, on the law, deny those branches of the petitioner's motion which were for partial summary judgment determining that it has standing as an aggrieved party under Real Property Tax Law § 704 and Administrative Code of the City of New York § 11-231 (a) in the consolidated tax certiorari proceedings, and to grant the cross motion, with an opinion in which KUNZEMAN, J., concurs.

Ordered that the order is modified, on the law, by (1) adding to the first decretal paragraph thereof, after the words "Section 166-1.0 of the Administrative Code of the City of New York" the words "and has standing to challenge any tax assessment which, by the operation of paragraphs 58, 69 and 42 (b) of its lease, caused it to come under a legal obligation to pay additional rent" and (2) deleting the third decretal paragraph thereof and substituting therefor a provision granting that branch of the cross motion which is addressed to the proceeding challenging the assessment for the tax year 1981-1982; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for a hearing with respect to the remaining branches of the cross motion, in accordance with the opinion herewith.